**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| APPLIED ENERGETICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N23C-07-200 EMD CCLD |
| | ) | |
| GUSRAE KAPLAN NUSBAUM PLLC, AND | ) | |
| RYAN WHALEN | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: January 19, 2024
Decided: April 16, 2024

*Upon Consideration of Defendants' Motion to Dismiss*
***GRANTED***

Theodore A. Kittila, Esquire, James G. McMillan, Esquire, William E. Green, Jr., Esquire, Halloran Farkas + Kittila, LLP, Wilmington, Delaware. *Attorneys for Plaintiff Applied Energetics, Inc.*

Robert J. Katzenstein, Esquire, Robert K. Beste, Esquire, Lauren A. Ferguson, Esquire, Smith Katzenstein & Jenkins, Wilmington, Delaware. *Attorneys for Defendants Gusrae Kaplan Nusbaum PLLC and Ryan Whalen.*

**DAVIS, J.**

## I.     INTRODUCTION

This is a breach of contract case assigned to the Complex Commercial Litigation Division of this Court. Plaintiff Applied Energetics, Inc. ("AEI"), is a Delaware company that is in the business of applied energy systems for military and commercial purposes. Defendants Gusrae Kaplan Nusbaum PLLC ("Gusrae") and Ryan Whalen[1] are a New York law firm and one of the firm's former attorneys.

---

[1] Gusrae and Mr. Whalen will be referred to collectively as "Defendants."

In 2017, AEI's stockholders initiated a lawsuit in the Court of Chancery against a manager of AEI for allegedly self-dealing transactions. Defendants represented the manager in the litigation. AEI's stockholders voluntarily dismissed the action in mid-2017. In early 2018, Defendants agreed to receive stock of AEI as payment for legal fees incurred in connection with the lawsuit, as well as a subsequent proxy contest. On March 8, 2018, AEI's stock transfer agent completed the transfer of the stock to Defendants. The same day, AEI's stockholders removed the manager from the board. AEI's new CEO terminated AEI's retention of Defendants, and about a month later, AEI initiated a lawsuit against the former manager in the Court of Chancery.

Defendants represented the former manager in this new lawsuit. During the litigation, in June 2019, one of the Defendants sold some of the company shares he had received in March 2018. Shortly thereafter AEI's management demanded a return of all the stock issued to Defendants in light of alleged conflicts of interest that existed at the time of the issuance in 2018. Defendants refused, and apparently unable to sell additional stock on the public market, Defendants filed a claim in New York federal court against AEI and several others. AEI believes Defendants filed the New York federal action to impair AEI's ability to fund the pending lawsuit in the Court of Chancery.

In September 2020, AEI settled the Court of Chancery action. In August 2021, Defendants voluntarily dismissed the New York federal action. Several months before Defendants' voluntary dismissal of the New York federal action, AEI's stock began to rise, and would continue to do so after the dismissal of the New York federal action.

Now, AEI filed suit here, asserting a claim for malicious prosecution against Defendants based on the Defendants' New York federal action. Defendants have moved to dismiss (the "Motion") the Complaint under Civil Rule 12(b)(2) and for failure to state a claim under Civil

2

Rule 12(b)(6).  After obtaining leave from the Court, Defendants raised, in their reply, improper claim splitting as an additional ground for dismissal.  On January 19, 2024, the Court heard oral argument on the Motion, and took the matter under advisement.

For the reasons set forth below, the Court finds that AEI has failed to identify sufficient Delaware contacts to establish personal jurisdiction over Defendants.  Accordingly, the Court does not address the alternative grounds for dismissal and will **GRANT** the Motion for lack of personal jurisdiction.

## II.     RELEVANT FACTS[2]

### A. PAST LITIGATION

On January 13, 2017, AEI's stockholders filed a lawsuit in the Court of Chancery challenging allegedly self-dealing transactions by its sole manager, George Farley (the "2017 Delaware Action").[3]  Gusrae, a law firm based in New York, served as counsel to Mr. Farley.[4] Mr. Whalen, an attorney at Gusrae, appeared *pro hac vice*.[5]  Following the voluntary dismissal of the action, AEI's stockholders initiated a proxy contest in January 2018 to remove Mr. Farley from management.[6]  Mr. Farley retained Gusrae to represent AEI in connection with the proxy contest.[7]

During this time, Mr. Farley agreed to pay Defendants' legal fees with AEI stock.[8]  On March 1, 2018, Mr. Farley requested that AEI's stock transfer agent, Continental Stock Transfer & Trust Company ("Continental"), issue the shares to Defendants.[9]  On March 2, 2018, AEI's

---

[2] The facts are drawn from the Complaint and documents incorporated by reference in the Complaint.
[3] *Superius Securities Group Inc. et al. v. George Farley et al.*, C.A No. 2017-0024 (Del. Ch.); Compl. ¶ 24.
[4] Compl. ¶¶ 8, 26; Motion to Dismiss ("MTD") (D.I. No. 10) at 1.
[5] *Id.* ¶ 27.
[6] *Id.* ¶¶ 29, 34.
[7] *Id.* ¶ 36.
[8] *Id.* ¶¶ 44, 45.
[9] *Id.* ¶ 51.

counsel sent a signed opinion letter to Continental.[10]  On March 8, 2018, Continental issued AEI stock certificates to Defendants.[11]

The same day that Continental issued the stock certificates to Defendants, AEI stockholders removed, by written consent, Mr. Farley from the Board of Directors.[12]  On March 11, 2018, with new management in place, AEI's chief executive officer ended AEI's retention of Gusrae.[13]  On July 3, 2018, AEI filed a lawsuit in the Court of Chancery against Mr. Farley and others (the "2018 Delaware Action").[14]  Defendants represented Mr. Farley in that litigation.[15]

On June 7, 2019, due to AEI's rising stock price, AEI filed a motion to reduce the bond that was set for the preliminary injunctive relief it had obtained against Mr. Farley.[16] Defendants, as counsel for Mr. Farley and others, argued that AEI was experiencing financial difficulties and submitted an opposing request to increase the bond amount.[17]  AEI contends that Defendants were seeking to prevent AEI from using the freed-up cash to fund the litigation.[18] The court ultimately denied the motion as well as the opposing request to increase the bond amount.[19]

On June 17, 2019, Mr. Whalen sold 100,000 of the 497,084 shares he held of AEI stock, clearing at $0.32 per share.[20]  On June 24, 2019, AEI, through its counsel, sent a letter to Gusrae and Mr. Whalen demanding a return of all shares to AEI ("Demand Letter").[21]  In the Demand

---

[10] *Id.* ¶ 53.
[11] *Id.* ¶ 56.
[12] *Id.* ¶ 57.
[13] *Id.* ¶ 58.
[14] *Id.* ¶ 59; *Applied Energetics, Inc. v. George Farley, et al.*, Case No. 2018-0489 (Del. Ch.).
[15] *Id.* ¶ 60.
[16] *Id.* ¶ 63.
[17] *Id.* ¶ 64.
[18] *Id.*
[19] *Id.*
[20] *Id.* ¶¶ 67, 69.
[21] *Id.* ¶ 70; Compl. Ex. A.

Letter, AEI elected to rescind the transaction in light of purported conflicts of interest existing at the time of the issuance.[22] Attempts to sell AEI shares stalled after AEI sent the Demand Letter.[23]

On July 3, 2019, Gusrae and Mr. Whalen filed an action in New York federal court against AEI and several other parties, alleging claims of federal securities fraud, tortious interference and libel per se (the "New York Action").[24] They alleged in part that AEI prevented them from selling their shares of AEI stock.[25]

In the fall of 2020, AEI settled the 2018 Delaware Action, and in early 2021, sued Defendants for malpractice in New York state court.[26] In February 2021, AEI's stock price rose from approximately $.30 to $.75 per share by the end of the month.[27] In the summer of 2021, Defendants sold their remaining shares, and voluntarily dismissed the New York Action in August 2021.[28] AEI's stock closed at $1.51 per share on August 11, 2021, and continued to rise thereafter.[29]

On September 7, 2021, Defendants filed another lawsuit against the Company in New York state court for libel per se.[30]

AEI has not asserted claims (or counterclaims) of malicious prosecution or alike in the New York, the 2018 Delaware Action or in the New York state court malpractice lawsuit. Upon inquiry during the hearing on the Motion, AEI's counsel stated that AEI has not sought other forms of sanctions (such as Civil Rule 11 sanctions) for misuse of litigation against Defendants.

---

[22] *See* Compl. Ex. A.
[23] Compl. ¶¶ 70-80.
[24] *Id.* ¶ 81.
[25] *Id.* ¶ 84; Compl. Ex. D ¶ 161.
[26] Compl. ¶ 92.
[27] *Id.* ¶ 94.
[28] *Id.* ¶¶ 95, 96.
[29] *Id.* ¶¶ 97.
[30] *Id.* ¶ 98.

## B. THIS LITIGATION

On July 26, 2023, AEI initiated this action against Defendants by filing a claim for malicious prosecution based on Defendants' filing of the New York Action. AEI argues that Defendants' intended effect of litigating the New York Action was to depress the AEI stock price and thereby limit AEI's ability to pursue its litigation against Mr. Farley and others in the Court of Chancery.[31] On September 11, 2023, Defendants filed the Motion, moving to dismiss the single-count complaint under Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to state a claim. On October 25, 2023, the Company filed Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss.[32] After obtaining leave from the Court to add an additional defense, on December 1, 2023, Defendants filed Defendants' Reply Brief in Support of Their Motion To Dismiss.[33] The Company filed Plaintiff's Sur-Reply Brief in Further Opposition to Defendants' Motion to Dismiss on December 22, 2023.[34] The Court heard argument on the Motion on January 19, 2024, and took the matter under advisement.

## C. THE PARTIES

AEI is a Delaware-incorporated company in the business of applied energy systems for military and commercial purposes.[35] AEI's principal place of business is Tucson, Arizona.[36] Gusrae is a law firm with its principal place of business in New York County, New York.[37] Mr. Whalen is a resident of New York.[38] Gusrae and Mr. Whalen are not residents of Delaware.

---

[31] *Id.* ¶¶ 2, 3, 91, 104, 111.
[32] ("Opp.") D.I. No. 13.
[33] D.I. No. 25.
[34] D.I. No. 26.
[35] Compl. ¶¶ 7, 17.
[36] *Id.* ¶ 7.
[37] *Id.* ¶ 8
[38] *Id.* ¶ 10.

6

### III.    STANDARD OF REVIEW

A plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the nonresident defendants.[39] "In ruling on a Rule 12(b)(2) motion, the Court may consider the pleadings, affidavits, and any discovery of record."[40] If no evidentiary hearing has been held, plaintiff need only make "a prima facie showing of personal jurisdiction and the record is construed in the light most favorable to the plaintiff."[41]

### IV.    DISCUSSION

AEI argues jurisdiction exists over Defendants, because Defendants' intended effect in filing the New York Action was to disrupt AEI's prosecution of the 2018 Delaware Action against Mr. Farley and others.[42] AEI believes that the New York Action depressed the value of AEI stock by 50%, forcing AEI to issue twice as many shares to fund its lawsuit against Mr. Farley and others in 2018 Delaware Action.[43] AEI contends that Defendants purposefully availed themselves of the benefits of this forum by appearing *pro hac vice* in the Court of Chancery actions.[44]

To determine whether Delaware courts can obtain personal jurisdiction over a nonresident, the court must consider (1) whether AEI identifies a valid means of invoking the Delaware Long Arm Statute, and (2) whether subjecting Defendants to jurisdiction in Delaware violates the due process clause of the fourteenth amendment.[45] When no jurisdiction exists

---

[39] *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 326 (Del. Ch. 2003).
[40] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).
[41] *Id.*
[42] Compl. ¶¶ 4, 13.
[43] *Id.* ¶¶ 4, 91.
[44] *Id* ¶ 13.
[45] *Harris v. Harris*, 289 A.3d 277, 297 (Del. Ch. 2023); *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986).

under step (1), the statutory analysis, it makes it unnecessary to engage in step (2), the constitutional analysis.[46]

Under the first step of the analysis, AEI invokes the Delaware Long Arm Statute, 10 *Del. C.* § 3104.[47]  The Supreme Court has instructed trial courts to broadly construe Section 3104 in order "to confer jurisdiction to the maximum extent possible under the Due Process Clause."[48] Section 3104 provides, in relevant part, that this Court may exercise personal jurisdiction over any nonresident "as to a cause of action…arising from" certain acts, including if the nonresident:

(1) [t]ransacts any business or performs any character of work or service in the State;

(2) [c]ontracts to supply services or things in this State; [or] …

(4) [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State[.][49]

## A. SECTION 3104(C)(1) AND (2)

Plaintiff identifies no Delaware-specific act giving rise to the claim for malicious prosecution.  Section 3104(c)(1) and (2) "will only support an exercise of personal jurisdiction with respect to those causes of action that have a nexus to the transaction of business that took place in the State."[50]  This nexus requirement is also reflected in the language of Section 3104, which requires the cause of action to "aris[e] from" the Delaware-specific acts.  The defendant's

---

[46] *Mt. Hawley Ins. Co. v. Jenny Craig, Inc.*, 668 A.2d 763, 767 (Del. Super. Ct. 1995).

[47] Opp. at 12.

[48] *Hercules Inc. v. Leu Trust and Banking (Bahamas) Ltd.*, 611 A.2d 476, 480–81 (Del. 1992).

[49] 10 *Del. C.* § 3104(c)(1), (2), (4).

[50] *Dow Chem. Co. v. Organik Kimya Holding A.S.*, 2017 WL 4711931, at *8 (Del. Ch. 2017) (quoting *Chandler v. Ciccoricco*, 2003 WL 21040185, at *11 (Del. Ch. 2003)); *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986) ("The conduct embraced in subsections (1) and (2), the transaction of business or performance of work and contracting to supply services or things in the State, may supply the jurisdictional basis for suit only with respect to claims which have a nexus to the designated conduct.")).

8

act must, therefore, "set in motion a series of events which form the basis for the cause of action before the court."[51] The identified act must "form a *source* of the claim."[52]

The in-state jurisdictional acts AEI identifies under subsections (1) and (2) of Section 3104(c) are Defendants' *pro hac vice* appearances in the Court of Chancery actions.[53] But the claim for malicious prosecution does not arise from these acts. While Defendants' legal services in connection with these actions preceded Defendants' decision to file the New York Action, it was the Defendants' act of filing the New York Action that purportedly gave rise to AEI's claim for malicious prosecution.[54] The amount of time that elapsed from Defendants' involvement in the Court of Chancery actions to the filing of the New York Action highlights this point. Defendants filed the New York Action approximately two years after the 2017 Delaware Action ended, and one year after the 2018 Delaware Action began.[55]

AEI attempts to tie the filing of the New York Action and Defendants' appearances in the 2018 Delaware Action by pointing to the fact that they overlapped in time.[56] The inference that AEI asks this Court to draw is that Defendants filed the New York action in order to "depress [the Company]'s stock price and hamstring [AEI]'s ability to prosecute the [2018

---

[51] *LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, 2017 WL 3912632, at *5 (Del. Ch. 2017) (quoting *Microsoft Corp. v. Vadem, Ltd.*, 2012 WL 1564155, at *7 (Del. Ch. 2012) (italics in original)).

[52] *LVI Grp. Invs., LLC*, 2017 WL 3912632, at *5 (citing *Sample v. Morgan*, 935 A.2d 1046, 1057 n. 43 (Del. Ch. 2007) and *Chandler,* 2003 WL 21040185, at *1 (Del. Ch. 2003)); *Lone Pine Res., LP v. Dickey,* 2021 WL 2311954, at *5 (Del. Ch. 2021) ("Because Section 3104(c)(1) confers specific, not general, jurisdiction, formation of a Delaware entity may only serve as the basis for personal jurisdiction where there is a sufficient nexus between that formation and the alleged wrongful conduct.")).

[53] Opp. at 12-14. Plaintiff also alludes to Defendants' involvement in the proxy contest, but identifies no acts related to the proxy contest occurring in Delaware. *Id.* at 17-18.

[54] Defendants make an additional argument that under Court of Chancery Rule 170(c)(iv) Mr. Whalen "consented to the appointment of the Register in Chancery as the agent upon whom service of process may be made for all actions, including disciplinary actions, that may arise out of the practice of law pursuant to his admission pro hac vice 'and any activities related thereto.'" *Id.* at 16. Rule 170(c)(iv), however, is not a jurisdiction-conferring statute; it is a court rule governing *pro hac* admissions.

[55] Compl. ¶¶ 29, 59, 81.

[56] Opp. at 13-14 ("Here, Defendants filed the Securities Fraud Action against AE on their own behalf *while at the same time* they appeared pro hac vice before the Delaware Court of Chancery to defend Farley against AE.") (italics in original).

9

Delaware Action]."[57]  Even if that were so,[58] the jurisdictional act giving rise to the claim for malicious prosecution is the filing of the New York Action, not Defendants' *pro hac vice* appearances in Delaware.[59]  At most, the pro hac vice appearances would constitute a contact with Delaware but not one relating to the filing of the New York Action.

Though AEI relies on *Sample v. Morgan* as support,[60] the Court's decision there is instructive in highlighting the absence of Delaware-specific contacts here.  In *Sample*, a non-resident attorney and law firm faced claims of aiding and abetting breaches of fiduciary duty for the actions they took in implementing the issuance of a Delaware company's shares to certain members of the company's board at an undervalued price.  The specific Delaware act that was "integral to [this] scheme" was the filing of a certificate of amendment in Delaware.[61]  In contrast, AEI identifies no Delaware-specific act giving rise to the claim in this action.  AEI, therefore, fails to establish personal jurisdiction under Section 3104(c)(1) or (2).

## B. SECTION 3104(C)(4)

AEI argues that personal jurisdiction is appropriate under Section 3104(c)(4), because of Defendants' extensive contacts with, and revenue derived from Delaware.  AEI contends that Defendants' legal fees incurred in the Court of Chancery actions constitute substantial revenue.[62]

---

[57] *Id*. at 14; Compl. ¶¶ 1-5.

[58] The Court is skeptical about Plaintiff's theory that Defendants filed the New York Action to depress the stock price of the Company and thereby impede the Company's ability to litigate its claims against Farley and others in the 2018 Delaware Action.  First, Defendants still possessed the Company stock, so it does not make sense to the Court why Defendants would be taking actions to depress the value of company stock they held and were trying to sell.  Second, the causal connection between the filing of the New York Action and stock price of the Company appears weak; the stock price began rising as early as February 2021, which was six months before dismissal of the New York Action.  Compl. ¶ 94.

[59] Plaintiff appears to make this concession in its Opposition.  Opp. at 2 ("Although [the Company's malicious prosecution claim arises from the [New York Action] (filed on July 3, 2019) and its impact on the [2018 Delaware Action] (filed a year earlier on July 3, 2018), Defendants' involvement with [the Company] began even earlier.")).

[60] *Id*. at 13; *Sample*, 935 A.2d at 1047.

[61] *Sample*, 935 A.2d at 1047.

[62] Opp. at 17.

Section 3104(c)(4), in contrast to Section 3104(c)(1) and (2), "permits the exercise of general personal jurisdiction over parties" if either the person regularly engages in business, a persistent course of conduct, or derives a substantial revenue from services, in the State.[63] Under that subsection, the jurisdictional act giving rise to the claim need not be within Delaware in order to confer personal jurisdiction so long as a plaintiff makes a showing of the defendant's general presence within the state.

AEI fails to establish the general presence factors above. AEI relies on Defendants' *pro hac vice* appearances and the fees generated from their work in the Court of Chancery actions.[64] The Court cannot accept this argument because, if successful, nearly all outside counsel would be subjected to the jurisdiction of Delaware courts in unrelated actions by virtue of one or two appearances in Delaware litigation. More is required. Because AEI has not shown Defendants' general presence in the state, *e.g.*, that either of the Defendants "regularly does or solicits business" in Delaware, Section 3104(c)(4) does not provide grounds to establish personal jurisdiction over Defendants.[65]

Even if the Court accepts that AEI has satisfied the general presence factors listed above, the Court is not convinced that a reduction in the price of publicly traded stock of a Delaware company is a cognizable harm under Section 3104(c)(4). Though the situs of the stock of a Delaware corporation is in Delaware, it is unclear to the Court whether actions occurring outside Delaware that negatively impact the stock price of a Delaware corporation can constitute

---

[63] *Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc*., 1995 WL 694397, at *10 (Del. Ch. 1995); 10 *Del. C.* § 3104(c)(4).

[64] Opp. at 17-18.

[65] In addition, Defendants must have current contacts in the forum state, and because the 2017 and 2018 Delaware Actions have settled, Plaintiff cannot establish the general presence factors. *Computer People, Inc. v. Best Intern. Grp., Inc*., 1999 WL 288119, at *7 (Del. Ch. 1999); *see* 10 *Del. C*. § 3104(c)(4) (providing for jurisdiction when "person regularly *does* or *solicits* business, *engages* in any other persistent course of conduct in the State or *derives* substantial revenue from services, or things used or consumed in the State.") (italics added)).

"tortious injury in the State." It also makes no difference to the Court whether the harm is a reduced stock price, or a client's ability to fund litigation in this forum. The latter is an effect of the former and poses the same question as to whether actions taken outside the state of Delaware that reduce the value of the stock of a Delaware company can constitute "tortious injury."

## V. CONCLUSION

For these reasons, the Court finds that AEI has alleged no Delaware-specific contact under Section 3104(c)(1) and (2), or the general presence factors in Section 3104(c)(4), to establish personal jurisdiction over Defendants. Consequently, failure to meet the first step of the jurisdictional analysis obviates this Court's need to engage in the second due process analysis.

The Motion is **GRANTED.**

Dated: April 16, 2024
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc:     File&ServeXpress

12